FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2018 JUL 24  AM 11: 05

STEPHAN HARRIS, CLERK
CHEYENNE

Granite Peak Law, PLLC
Gregory G. Costanza, Esq. (WY 7-5257)
PO Box 635
Bozeman, Montana 59771
(o) (406) 586-0576
Gregory@GranitePeakLaw.com
Attorney for Plaintiff Whitmire

## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

SCOTT WHITMIRE,

     Plaintiff,

v.

PHILLIP A. WOLF; KATHLEEN
CARRASCO (a/k/a KATHLEEN
WOLF); BRADLEY A. WOLF;
JENNIFER WOLF; WOLF AUTO
GROUP, LLC; ALLIANCE CAPITAL
GROUP, LLC; WOLF AUTO
CENTER, LLC; WOLF'S
INTERSTATE LEASING AND
SALES, LLC; WOLF AUTO
CENTER JACKSON, LLC; WOLF'S
PINEDALE DODGE, LLC; WOLF'S
WHITEHALL FORD, LLC; DAVID
DELOACH; THOMAS E. RICE;
NANCY K. RICE and Does 1 through
25,

     Defendants

Cause No. 18-CV-120-J

VERIFIED COMPLAINT FOR
INJUNCTION, DAMAGES, CIVIL
PENALTIES AND OTHER
EQUITABLE RELIEF

---

COMPLAINT                                            Page 1

Plaintiff Scott Whitmire hereby brings this verified complaint against Defendants for reverse veil piercing / alter ego, breach of contract, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), violations of the Uniform Fraudulent Transfer Act, and other claims. In support thereof, Plaintiff states the following:

## PARTIES

### Plaintiff and the Individual Defendants

1.      Plaintiff Whitmire is an individual who resides in Atlanta, Georgia.

2.      Defendant Phillip A. Wolf ("P. A. Wolf") is an individual who is believed to reside in, and during the past ten years has frequently moved between, Colorado, Wyoming, and Montana.

3.      Defendant Kathleen Carmen Carrasco ("Carrasco") is an individual who is believed to reside in, and during the past ten years has frequently moved between, Colorado, Wyoming, and Montana, with P. A. Wolf.

4.      Carrasco and P. A. Wolf were married on February 21, 1970 in Denver, Colorado.

5.      During the times relevant to this complaint, Carrasco alternated between using the surnames Wolf and Carrasco. P. A. Wolf claims to have divorced Carrasco. On information and belief, Plaintiff Whitmire alleges P. A. Wolf and

Carrasco are still married and both continue to transact business on behalf of Defendants.

6.      Defendant Bradley A. Wolf ("B. A. Wolf") is an individual who resides in or around Alpine, Wyoming. B. A. Wolf is P. A. Wolf's son.

7.      Defendant Jennifer Wolf ("J. Wolf") is an individual who resides in or around Alpine, Wyoming. Defendant J. Wolf is married to B. A. Wolf.

8.      Defendant David DeLoach is an individual who resides in Dana Point, California.

9.      Defendant Thomas E. Rice is an individual who is believed to reside in Montana.

10.     Defendant Nancy K. Rice is an individual who is believed to reside in Montana.

### Wolf Auto Group

11.     Defendant Wolf Auto Group, LLC ("Wolf Auto Group") is a Wyoming Limited Liability Company with its principal place of business at P.O. Box 990, Pinedale, Wyoming 82941 and a mailing address of PO Box 3947, Jackson, Wyoming, 83001.

12.     The initial Articles of Incorporation listed P. A. Wolf as sole member of the member-managed LLC. Subsequent filings amended the articles to add

"Kathleen Wolf" (i.e. Defendant Carrasco) and B. A. Wolf as members and to vest management in Alliance Capital Group, LLC. The most recent filings indicate that B. A. Wolf acts as manager. A July 17, 2017 annual report indicates that Alliance Capital Group, LLC serves as registered agent, with an address of 210 Nichols Ave, Casper, WY 82601.

13.    On information and belief, Wolf Auto Group is controlled and used by P. A. Wolf, Carrasco, B. A. Wolf, J. Wolf, and/or other Defendants to transact business as, or on behalf of, automobile dealerships controlled by P. A. Wolf.

## Alliance Capital Group

14.    Defendant Alliance Capital Group, LLC ("Alliance Capital Group") is a Wyoming Limited Liability Company whose principal place of business was most recently at 2124 Hidden Ranch Ln, Jackson, WY 83001.

15.    Alliance Capital Group was initially formed as a "shelf LLC" in 2008 by Defendant David DeLoach and, upon information and belief, transferred to Defendants P. A. Wolf, Carrasco, B. A. Wolf, and/or J. Wolf in 2010. While they used the pseudonym "Dave Delvue" to obscure their management of the company, Plaintiff Whitmire alleges on information and belief that Defendants P. A. Wolf and Carrasco have been and currently are members and/or managers of Alliance Capital Group.

## Wolf's Interstate Leasing and Sales

16.     Defendant Wolf's Interstate Leasing and Sales, LLC ("Wolf's Interstate Leasing and Sales") is a Wyoming Limited Liability Company with a principal place of business of either 123 W. 1st St, Ste 675, Casper, Wyoming 82601 or 170 Travis Way, Manhattan, Montana 59741.

17.     Defendant P. A. Wolf initially described Wolf's Interstate Leasing and Sales as a "sole proprietor (sic-proprietorship) in a 2009 UCC filing then organized it as and LLC on October 7, 2010. Wolf's Interstate Leasing and Sales was administratively dissolved on December 10, 2011 but reinstated on October 19, 2017.

18.     On information and belief, Wolf's Interstate Leasing and Sales has transacted business between Colorado, Wyoming and Montana from 2009 through the present.

19.     On information and belief, Wolf's Interstate Leasing and Sales has been controlled and used by P. A. Wolf, Carrasco, B. A. Wolf, J. Wolf, and/or other Defendants to transact business as, or on behalf of, automobile dealerships controlled by P. A. Wolf.

## Wolf Auto Center

20.     Defendant Wolf Auto Center, LLC ("Wolf Auto Center") is a South Dakota Limited Liability Company formed in 2015 with its current principal place of business at 94 US Hwy 16 E in Buffalo, Wyoming. Wolf Auto Center's principal place of business in Montana was 490 Alaska Frontage Rd, Belgrade, Montana 59714.

21.     P. A. Wolf and B. A. Wolf jointly serve as members/managers of Wolf Auto Center.

22.     On information and belief, Wolf Auto Center has been controlled and used by P. A. Wolf, Carrasco, B. A. Wolf, J. Wolf, and/or other Defendants to transact business as, or on behalf of, automobile dealerships controlled by P. A. Wolf.

## Wolf's Pinedale Dodge

23.     Defendant Wolf's Pinedale Dodge, LLC is a Wyoming Limited Liability Company with its principal place of business at 486 S. Pine St., Pinedale, Wyoming 82941.

24.     On information and belief, Wolf's Pinedale Dodge, LLC has been controlled and used by P. A. Wolf, Carrasco, B. A. Wolf, J. Wolf, and/or other

Defendants to transact business as, or on behalf of, automobile dealerships controlled by P. A. Wolf.

## Wolf's Whitehall Ford

25.     Defendant Wolf's Whitehall Ford, LLC is a Montana Limited Liability Company with its principal place of business at 310 E Legion St, Whitehall, Montana 59757.

26.     On information and belief, Wolf's Whitehall Ford, LLC has been controlled and used by P. A. Wolf, Carrasco, B. A. Wolf, J. Wolf, and/or other Defendants to transact business as, or on behalf of, automobile dealerships controlled by P. A. Wolf.

## Wolf Auto Center Jackson

27.     Defendant Wolf Auto Center Jackson, LLC is a Wyoming Limited Liability Company with its principal place of business at P.O. Box 3579, Jackson, Wyoming, 83001.

28.     On information and belief, Wolf Auto Center Jackson, LLC has been controlled and used by P. A. Wolf, Carrasco, B. A. Wolf, J. Wolf, and/or other Defendants to transact business as, or on behalf of, automobile dealerships controlled by P. A. Wolf.

**Does 1-25**

29.     Does 1-25 are persons whose names are presently unknown who participated with the named Defendants to perpetrate the claims described in this Complaint.

## JURISDICTION AND VENUE

30.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the Complaint contains a federal question arising under 18 U.S.C. § 1964.

31.     This Court has supplemental jurisdiction over Whitmire's state-law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the federal claim.

32.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 based on diversity of citizenship because Plaintiff Whitmire is not a citizen of a state in which any Defendant is a citizen and the amount in controversy exceeds $75,000, exclusive of interest and costs.

33.     This court has personal jurisdiction over all defendants pursuant to Fed.R.Civ.P. 4(k)(1)(A) and Wyo. Stat. Ann. § 5-1-107.

34.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a) because the Defendants currently reside in this district, a

substantial part of the events or omissions giving rise to the claim occurred in this district, and defendants are subject to personal jurisdiction in this district.

## FACTS COMMON TO ALL CLAIMS

### The Purchase Agreement

35.   Over at least the past decade and a half, Defendant P. A. Wolf has owned and operated a number of used automobile dealerships in Montana and Wyoming through different limited liability companies.

36.   On August 15, 2005, P. A. Wolf created Defendant Wolf Auto Group by filing Articles of Organization with the Wyoming Secretary of State. In the articles, P. A. Wolf listed himself as sole Member, with an address of P.O. Box 16804, Golden, Colorado 80402.

37.   At that time, Plaintiff Whitmire owned and operated a Ford dealership in Jackson, Wyoming known as "Cowboy Motors." Whitmire desired to sell Cowboy Motors and hired Charles Ekberg to find a buyer. Ekberg contacted Defendant P. A. Wolf, who expressed interest in purchasing Cowboy Motors.

38.   In December 2007, Plaintiff Whitmire and Defendants P. A. Wolf and Wolf Auto Group entered into a written agreement (the "Purchase Agreement). In the Purchase Agreement, P. A. Wolf and Wolf Auto Group agreed to pay Whitmire $200,000.00, plus an additional sum for inventory in the amount of $51,707.27, in

consideration for the purchase of most Cowboy Motors assets, including the Ford franchise.

39.    The Purchase Agreement required P. A. Wolf and Wolf Auto Group to submit certain paperwork to, and obtain approval from, Ford for the transfer of the franchise on or before February 28, 2008. The typical application process to obtain Ford franchise approval takes no more than 90 days, perhaps even less if the applicant already has a Ford franchise, as P. A. Wolf and Wolf Auto Group did.

40.    By February 28, 2008, P. A. Wolf and Wolf Auto Group had submitted only a portion of the paperwork required to complete the application process. Whitmire agreed to extend the deadline another four months to July 1, 2008.

41.    On June 23, 2008, P. A. Wolf filed an Amendment to the Articles of Organization for Wolf Auto Group changing the members from P. A. Wolf as a sole member to "Phillip and Kathleen Wolf" and "Brad Wolf" as members.

## The UCC Filings and the Whitmire Suit

42.    As of July 1, 2008, P. A. Wolf and Wolf Auto Group still had not obtained approval for the Ford franchise.

43.    Around this time, P. A. Wolf began filing a series of fraudulent UCC Financing Statements with the Colorado Secretary of State.

44. The first, filed on July 9, 2008 as Doc. 20082069255 named "Wolf; Phillip A., Organization/Trade Mark/Trade Name" and "Wolfs Interstate Leasing and Sales" as debtors and "Phillip Andrew Wolf" as the secured party. The financing statement described both debtors as "businesses" organized in "Puerto Rico" but sharing a Post Office Box (P.O. Box 16804) in Golden, Colorado.

45. On information and belief, Plaintiff Whitmire alleges that no such legal entity exists as "Wolf; Phillip A., Organization/Trade Mark/Trade Name."

46. Under the description of collateral, the July 9, 2008 financing statement refers to an attached "Commercial Security Agreement." The referenced agreement provides: "This Security Agreement ("AGREEMENT") is made and entered into on July 14, 1952 by and between the 'real man' Phillip A. Wolf (hereinafter known as the Secured Party) and the Jurisdic Person/Strawman/Dummy Corporation Phillip A. Wolf, Organization (hereinafter known as DEBTOR)." The agreement goes on to describe collateral consisting of significant real and personal property, including: airplanes, bank accounts, trusts, life insurance policies, equipment, and land.

47. The security agreement is dated July 1, 2008–the same day as the second deadline to obtain the Ford franchise under the purchase agreement.

48.    On information and belief, Plaintiff Whitmire alleges P. A. Wolf either mailed or wired the financing statement to the Colorado Secretary of State.

49.    On July 18, 2008, Ekberg sent an e-mail to P. A. Wolf informing him that Plaintiff Whitmire "has had alot of conversation with his lawyer and there is strong consideration to commence legal action in the immediate future."

50.    On August 8, 2008 Whitmire filed suit in Teton County, Wyoming against Defendants P. A. Wolf and Wolf Auto Group for breach of the Purchase Agreement.

51.    On December 4, 2008, Articles of Organization were filed for Defendant Alliance Capital Group with the Wyoming Secretary of State. The Articles of Organization list "Pyramid Management, LLC" as its first manager and Corp 95 as its registered agent. Defendant DeLoach signed the document on behalf of both entities.

52.    Deloach is a former California attorney who was disbarred by order of the California Supreme Court in 1974 after a conviction.

53.    Corp 95 is a Wyoming corporation formed in 2003 by DeLoach. According to its website, Corp 95 sells "shelf" companies and, for an extra fee, provides an "anonymous package" that sells "nominee services" to guarantee "your privacy of ownership," which "can help your business *stay* in business."

54.     On April 22, 2009, P. A. Wolf filed a second UCC Financing Statement (Doc. 20092035141) with the Colorado Secretary of State. Like the previous filing, the April 22, 2009 financing statement lists P. A. Wolf as both the secured party and the debtor. Also like the previous filing, the financing statement describes "Phillip Andrew Wolf" as an organization, rather than as an individual.

55.     On information and belief, Plaintiff Whitmire alleges P. A. Wolf caused the April 22, 2009 filing to be made by use of the mail or wires.

56.     On July 28, 2009, Wolf Auto Group filed an annual report with the Wyoming Secretary of State. The annual report changed the mailing address of Wolf Auto Group to P. O. Box 3579, Jackson, WY 83001. The document contains a signature of "PLoose Agt" on behalf of Wolf Auto Group. On information and belief, "P Loose" is an alias for P. A. Wolf. The alias "PLoose" appears again in a July 29, 2010 annual report for Wolf Auto Group. On information and belief, Plaintiff Whitmire alleges Defendant P. A. Wolf caused both documents to be filed by use of the mail or wires.

57.     On August 7, 2009, a third UCC Financing Statement (20092067239) was filed, this time purportedly on behalf of Alliance Capital Group, LLC as secured party and naming P. A. Wolf and "Kathleen Wolf" (aka Defendant Kathy Carrasco) as the debtors. The financing statement describes the collateral consisting of "ALL

Assets and real property located at 2982 Robinson Hill Rd" in Golden, Colorado including "construction equipment, farm equipment, mining equipment of any type, ranch equipment, [and] horse trailers."

58. The August 7, 2009 UCC filing includes a "Notice of Claim of Maritime Lien" claimed by Alliance Capital against a vessel known as the "U.S. M/V L.O.C. Trust" which it describes as being owned by then Secretary of Transportation Ray Lahood.

59. The August 7, 2009 UCC filing also includes a promissory note whereby P. A. Wolf, "Kathleen Wolf" (aka Kathy Carrasco) and an entity referred as the "L.O.C. Trust" agree to pay Alliance Capital Group, LLC $20 million. The document does not indicate what consideration, if any, was given in exchange for the note, stating only "for value received."

60. On information and belief, Plaintiff Whitmire alleges either Defendant P. A. Wolf and/or Defendant Carrasco caused the August 7, 2009 filing to be made by use of the mail or wires.

61. On August 25, 2009, a fourth UCC financing statement was filed with the Colorado Secretary of State. This document identifies the debtor as "Wolfs Interstate Leasing &Sales (sic)", which it describes as a "sole proprietor," and the

secured party as "Phillip Andrew Wolf." The document states, "all property belonging to debtor belongs to secured party creditor."

62.     The August 25, 2009 UCC filing includes another "Notice of Claim of Maritime Lien" claimed by Alliance Capital against another vessel, this time by the name of U.S. M/V Wolfs Interstate Leasing &Sales (sic) All/K/A," purportedly owned by Secretary of Transportation Ray Lahood in the amount of $20 million "plus interest, late fees, attorney fees, etc..."

63.     On information and belief, Plaintiff Whitmire alleges either Defendant P. A. Wolf or Defendant Carrasco caused the August 25, 2009 filing to be made by use of the mail or wires.

64.     By February 4, 2010, Defendant Wolf Auto Group, LLC had not hired counsel to defend itself in the state court proceeding and the Teton County District Court entered a default against it.

65.     On June 9, 2010, P. A. Wolf filed an Amendment to the Articles of Organization for Wolf Auto Group "to resign" Phillip Wolf, Kathleen Wolf, and Brad Wolf as "managers" and to "appoint Alliance Capital Group, LLC 1617 No. Main St. Suite B, Sheridan, WY 82801" as the manager in their place.

66.     On June 18, 2010, P. A. Wolf also filed a Statement of Change by Business Entity naming Alliance Capital Group as the registered agent for Wolf

Auto Group and re-naming P. A. Wolf as member and manager. On information and belief, Plaintiff Whitmire alleges P. A. Wolf and/or Wolf Auto Group filed the Statement with the Wyoming Secretary of State by use of the mail or wires.

67.     On information and belief, Plaintiff Whitmire alleges that in the July 18, 2010 Statement of Change, P. A. Wolf forged the signature of David DeLoach on behalf of Alliance Capital Group.

68.     On September 1, 2010 a trial was held in the Teton County District Court on Plaintiff Whitmire's claim for breach of contract.

69.     On October 7, 2010, Articles of Incorporation were filed with the Wyoming Secretary of State for an entity referred to as "Wolf,s (sic) Interstate Leasing and Sales, LLC," naming Alliance Capital Group as its registered agent and signed by "Kathy Carrasco" as both incorporator and Authorized Representative of Alliance Capital. On information and belief, Plaintiff Whitmire alleges either Phillip A. Wolf or Kathleen Wolf (a/k/a Kathy Carrasco) caused the documents to be filed by use of the mail or wires.

70.     Over the next two days, Alliance Capital Group and Wolf's Interstate Leasing and Sales made three additional filings.

71.     On October 8, 2010, Wolf's Interstate Leasing and Sales filed a Statement of Foreign Entity Authority with the Colorado Secretary of State, listing

Kathy Carrassco (sic) as the registered agent. That same day, Alliance Capital Group filed as foreign entity doing business in Colorado, and states that it is operating under the "assumed entity name" of "Alliance *Capitol* Group LLC". On information and belief, Plaintiff Whitmire alleges the misspelling of Carrasco's last name and the word "Capital" were not accidental and instead were done with intent to deceive Whitmire and other creditors.

72. On information and belief, Plaintiff Whitmire alleges that at some time in 2010, P. A. Wolf, Carrasco, B. A. Wolf, and/or J. Wolf purchased Alliance Capital Group from Defendant DeLoach and began using Alliance Capital Group as a registered Agent for almost all Wolf entities.

73. On December 9, 2010, P. A. Wolf filed a Statement of Change by Registered Agent with the Wyoming Secretary of State, listing himself as "agent" for Alliance Capital Group. This Statement of Change changed the registered office for Alliance Capital Group to 210 Nichols Ave, Casper, Wyoming 82601. This filing reflected that Alliance Capital Group served as the registered agent in Wyoming not only for Wolf Auto Group but also for "Wolfs Pinedale Dodge LLC," "Wolf Auto Center Jackson LLC," and "Wolf's Interstate Leasing and Sales, LLC."

74. On December 10, 2010 the Teton County District Court entered a judgment in favor of Plaintiff Whitmire and against P. A. Wolf and Wolf Auto

Group for breach of the Purchase Agreement. In addition, it also found that Defendants P. A. Wolf and Wolf Auto Group converted property valued at $40,000 when they removed computer and telephone systems that were not included in the purchase agreement. In total, the Court entered judgment against P. A. Wolf and Wolf Auto Group, jointly and severally, in the amount of $278,161.31.

### Bankruptcy and Other Efforts to Evade the Judgment

75.    The same day the Wyoming district court entered its judgment, Plaintiff Whitmire diligently filed in Gilpin County, Colorado a motion to domesticate the Wyoming judgment in Colorado.

76.    Seven days later, on December 17, 2010, Defendant P. A. Wolf filed a voluntary petition under Chapter 13 of the Bankruptcy code in the United States Bankruptcy Court for the District of Colorado. Pursuant to section 362 of the bankruptcy code, the filing of the petition automatically stayed all collection actions against him. On information and belief, Plaintiff Whitmire alleges P. A. Wolf caused the petition to be filed by use of the mail or wires.

77.    On December 20, 2010, the bankruptcy court issued a "Notice of Deficiency." The notice described P. A. Wolf's failure to file a statistical summary of liabilities, evidence of income, a statement of income, a chapter 13 plan, as well as

other schedules and statements as required by the bankruptcy rules and gave until January 1, 2011 to cure this deficiency, or the case would be dismissed.

78.     On February 1, 2011, the bankruptcy court, per Bankruptcy Judge Michael E. Romero, dismissed P. A. Wolf's bankruptcy case for failure to cure these deficiencies.

79.     On information and belief, Plaintiff Whitmire alleges Defendant P. A. Wolf never intended to file the documents necessary to cure the deficiency and filed the bankruptcy petition for the sole purpose of obtaining the benefit of the automatic stay during which time he transferred funds out of his own accounts and those of Wolf Auto Group.

80.     On May 5, 2011, plaintiff Whitmire filed writs of garnishment in Gilpin County, Colorado, and served the writs on Bank of the West and Wells Fargo Bank.

81.     Bank of the West answered that it held only $187.96 of funds belonging to defendant P. A. Wolf. Wolf filed a claim of exemption. However, the Court found that claim to be meritless.

82.     Wells Fargo answered that it could find no account for Phillip Wolf.

83.    Plaintiff Whitmire hired a private investigator who reported that Wells Fargo then held approximately $56,804.85 in checking accounts in the name of "Wolf's Interstate Leasing and Sales, LLC dba Wolf Auto Group."

84.    On or about October 26, 2011, Defendant B. A. Wolf acquired property at 170 Travis Way in Manhattan, Montana. 170 Travis Way is a commercial property that B. A. Wolf owned until November 6, 2017 when he sold it to a third party. At that time, the value was appraised at $746,700.00.

85.    On information and belief, Defendant B. A. Wolf acquired 170 Travis Way with funds advanced by defendant P. A. Wolf.

86.    At various times between 2011 and 2017, Defendants P. A. Wolf, Carrasco, Wolf Auto Center, Wolf's Interstate Leasing and Sales, Wolf Auto Group, and Alliance Capital Group all used the Travis Way Property as their address.

87.    On May 15, 2012, P. A. Wolf (purportedly as "Manager") filed an Amendment to the Articles of Organization for Wolf Auto Group "to resign" Alliance Capital Group and "appoint Brad Wolf as manager." The Amendment lists B. A. Wolf's address as "PO Box 3579, Jackson, WY 83001." Alliance Capital Group remained the registered agent.

88.    For the next two years, Defendants P. A. Wolf and Wolf Auto Group made no payment on the Wyoming judgment and instead engaged in actions that

made it difficult for Plaintiff Whitmire to pursue collection. These included the transferring of funds out of the hands of the judgment debtors, moving to Montana, and not filing the required paperwork to maintain their business entities.

89.    By March 1, 2014 Alliance Capital Group became delinquent in Colorado due to its failure to file a Periodic Report. During this period, Defendants' failure to make the required filings made it difficult for Plaintiff Whitmire to pursue collections.

## Move to Montana

90.    Finally, on April 28, 2014, Alliance Capital Group filed as a foreign entity doing business in Montana by filing a Certificate of Authority with the Montana Secretary of State. The document listed "Kathy Carrasco" as registered agent in Montana, with a street address of "170 Travis Way, Manhattan, Montana 59741.

91.    On information and belief, Plaintiff Whitmire alleges either Defendant P. A. Wolf and/or Defendant Carrasco caused the filing to be made by use of the mail or wires.

92.    In Alliance Capital Group's Certificate of Authority filed with the Montana Secretary of State, Carrasco listed "Dave Delvue" of 318 McMicken St., Rawlins, Wyoming 82301 as the managing Manager or managing Member of the

company. On information and belief, Plaintiff Whitmire alleges Dave Delvue is either an alias, pseudonym and/or sham "nominee director" of Alliance Capital Group used to obscure Defendant P. A. Wolf's interest in the company.

93. The address 318 McMicken St., Rawlins, WY, 82301 is, in fact, an addressed used by Defendant David DeLoach to transact business on behalf of Corp 95.

94. The Certificate of Authority also provides an e-mail address of pkwolf1@gmail.com for Carrasco. In various filings before the Secretaries of State of Montana and Wyoming, P. A. Wolf, Carrasco, and "Andrew Phillips" have all used the email address pkwolf1@gmail.com.

95. On information and belief, Plaintiff Whitmire alleges Carrasco began using her maiden name and used the fake name "Dave Delvue" for the purpose of obscuring Defendant P. A. Wolf's connection to Alliance Capital Group as part of a scheme to defraud Plaintiff Whitmire and other creditors.

96. Around this time in 2014, Plaintiff Whitmire learned that Defendant P. A. Wolf had moved to Montana.

97. Accordingly, on August 1, 2014, Plaintiff Whitmire filed a petition in the 18th Judicial District Court, Gallatin County, Montana to register the Wyoming judgment in Montana.

98.   Shortly thereafter, on October 27, 2014, Defendant Carrasco filed another UCC financing statement with the Montana Secretary of State, this time naming Alliance Capital Group as the secured party and Wolf's Whitehall Ford and Wolf Auto Center as the debtors. The October 27, 2014 financing statement purports to establish a security interest in substantially all property of Wolf's Whitehall Ford and Wolf Auto Center and purports to cover "any and all Wolf entities whether now existing or hereafter arising or acquired."

99.   The October 27, 2014 financing statement also incorporates and attaches the same $20 million promissory note whereby Phillip and Kathleen Wolf and the "L.O.C. Trust" agree to pay Alliance Capital Group, LLC $20 million and includes the handwritten annotation, "renewed Feb. 19th, 2013."

100.   On information and belief, Plaintiff Whitmire alleges that no such debt existed and that the UCC Financing Statement was used as a basis to fraudulently transfer property from one P. A. Wolf-controlled entity, Wolf Auto Center to another P. A. Wolf-controlled entity, Alliance Capital Group.

101.   On March 17, 2015, Articles of Organization were filed, this time in South Dakota, for a new entity known as "Wolf Auto Center, LLC." The Articles listed "Cache Wolf" as a "Member."

102.   On information and belief, Plaintiff Whitmire alleges either Defendant P. A. Wolf and/or Defendants Carrasco and/or B. A. Wolf caused the March 17, 2015 filing to be made by use of the mail or wires.

103.   On information and belief, Plaintiff Whitmire alleges that no such person ever existed and that "Cache Wolf" is a pseudonym used by Defendant P. A. Wolf to obscure his interest in Defendant Wolf Auto Center.

104.   Meanwhile, on April 15, 2015, pursuant to Whitmire's petition registering the Wyoming judgment in Montana, Plaintiff Whitmire caused a writ of execution to be served upon First Interstate Bank and collected a mere $297.56 from an account held by P. A. Wolf.

105.   On April 20, 2015, Defendant Phillip A. Wolf, listing himself as "Member/Mgr," filed a Statement of Dissociation with the South Dakota Secretary of State indicating that "Cache Wolf" had dissociated from Wolf Auto Center.

106.   Plaintiff Whitmire alleges that P. A. Wolf filed the Statement of Dissociation with the South Dakota Secretary of State by use of the mail or wires.

107.   Subsequently, on June 1, 2015, Wolf Auto Center filed a Certificate of Authority to transact business in Montana.

108. On August 31, 2015, Plaintiff Whitmire moved the Montana district court to require Defendant P. A. Wolf to personally appear and answer questions concerning his property.

109. On October 15, 2015, P. A. Wolf, as "Member/Mgr" of Wolf Auto Center filed an Application for Amended Articles of Organization with the South Dakota Secretary of State, stating that "Bradley Alan Wolf 2124 Hidden Ranch Drive, Jackson, WY 83001" was now "a member/manager" of Wolf Auto Center.

### The Debtors' Examination

110. On November 17, 2015, Defendant P. A. Wolf personally appeared for the debtors' examination in Montana's 18th Judicial District Court, Gallatin County, was sworn in, and testified under oath.

111. When asked for his social security number at the outset of the hearing, P. A. Wolf expressed his intention to "plead the Fifth on probably most of the questions" on the basis that his "life is pretty public record and, you know, it's – but I don't know that I can really add much to it."

112. P. A. Wolf refused to answer any questions about his social security number. On information and belief, Plaintiff Whitmire alleges Defendant Phillip A. Wolf has been issued and/or has used multiple social security numbers.

113. Despite the extensive list of assets shown in the prior UCC financing statements, P. A. Wolf testified at the debtor's examination that he had no income or assets. Wolf specifically denied having any stocks, bonds, securities, certificates of deposit, traveler's checks, personal effects worth more than $4,000, jewelry, life insurance policies with a cash surrender value of more than $4,000, business equipment, tools, machinery, or accounts receivable, all assets he claimed to have in UCC financing statements filed earlier.

114. In addition, despite having filed two documents with the South Dakota Secretary of State a mere one and seven months prior that described himself as a "member/mgr" of Wolf Auto Center, at the debtor's examination P. A. Wolf specifically denied owning any businesses.

115. When asked about Wolf Auto Group, P. A. Wolf stated, "it could be still active. It's just there is no business related to it."

116. When asked about Wolf Auto Center, P. A. Wolf admitted his son B. A. Wolf "has a business in Montana," and, despite the previous filings claiming he was a "member/mgr" of Wolf Auto Center, described his relationship to the company as that of an "independent contractor" and "consultant" for which he receives an income of approximately $200 per car.

117.  P. A. Wolf also admitted he owns a 2013 Ford Expedition, which he never registered but "get[s] provided the dealer plates."

118.  P. A. Wolf testified at the time of the debtor's examination he did not have a home but instead lived "between a car or a girlfriend or a friend" for the "last few years." Wolf further testified "sometimes I make enough money to get a room and get out of people's hair."

119.  P. A. Wolf admitted he was served at 490 Alaska Frontage Road in Belgrade, Montana. On information and belief, Plaintiff Whitmire alleges 490 Alaska Frontage Road is a residence that was also listed as the principal place of business for Wolf Auto Center.

120.  P. A. Wolf further testified he "used to be married" and that he "lost [his] wife."

121.  Notwithstanding this alleged divorce, Carrasco continues to serve as registered agent for P. A. Wolf's business entities. In an August 11, 2017 "Periodic Report" filed with the Colorado Secretary of State, P. A. Wolf listed Carrasco as the registered agent for Wolf's Interstate Leasing & Sales.

122.  The August 11, 2017 Periodic Report also provides a street address for Carrasco of "170 Travis Way, Manhattan, CO 59741" and a mailing address of "PO Box 957, Belgrade, CO 59714." There are no incorporated cities or towns in

Colorado by the name of "Manhattan" or "Belgrade." While there was a ghost town in Colorado known as "Manhattan," the town is not incorporated and residents of "Manhattan, Colorado" if any exist, would have an address designated by the nearby town of Red Feather Lakes.

### Recent Activities

123.   In a Certificate of Reinstatement filed with the Wyoming Secretary of State on October 19, 2017, Carrasco listed herself as Registered Agent for Alliance Capital Group and used P. A. Wolf's e-mail address, pkwolf1@gmail.com.

124.   Alliance Capital Group's 2017 Wyoming Annual Report names Carrasco as the registered agent with an address of 2124 Hidden Ranch Lane, Jackson, Wyoming 83001.

125.   The 2124 Hidden Ranch Lane property was formerly the residence of B. A. Wolf and J. Wolf, and was sold to third parties in the summer of 2017. According to the Wyoming cadastral website, the property has an actual value of $1,163,682.00. On information and belief, defendants B. A. Wolf and J. Wolf purchased the property with funds advanced by Defendant P. A. Wolf.

126.   After selling the 2124 Hidden Ranch Lane, Jackson property, B. A. Wolf acquired property at 500 McNeal Power Plant, Alpine, Wyoming 83118. On

information and belief, Plaintiff Whitmire alleges that Defendant B. A. Wolf acquired the Alpine property with proceeds from the sale of the Jackson property.

127.   On October 26, 2017, Wolf Auto Center stated that its Registered Agent in Montana was Alliance Capital Group at 310 E. Legion St., Whitehall, Montana.

128.   The Jefferson County property tax roll lists the owner of 310 E. Legion St. in Whitehall as: "Rice Thomas E. & Nancy K % Wolf Phillip." On information and belief, Plaintiff Whitmire alleges "%" designates a form of trustee relationship whereby the Rices held legal title for the benefit of Defendant P. A. Wolf.

129.   On March 12, 2018, Alliance Capital Group acquired the 310 E. Legion Street property in Whitehall.

130.   On information and belief, plaintiff Whitmire alleges P. A. Wolf either transferred the property himself or caused the Rices to transfer the property to Alliance Capital Group.

131.   Most recently, on March 20, 2018, Wolf Auto Center filed a change of address form with the Wyoming Secretary of State indicating its principal address is now 94 US Hwy 16 E in Buffalo, Wyoming. The form is signed by "Andrew Phillips."

132. The March 20, 2018 form is in the handwriting of Defendant Phillip A. Wolf. On this basis, Plaintiff Whitmire alleges that no "Andrew Phillips" exists, that "Andrew Phillips" is a pseudonym used by Defendant P. A. Wolf, and that Defendant P. A. Wolf executed and mailed or wired the form using a fake name as part of a scheme to defraud creditors.

## FIRST CLAIM
## REVERSE PIERCING / ALTER EGO
### Against All LLC Defendants

133. Plaintiff Whitmire hereby incorporates all allegations contained in the preceding paragraphs of this Verified Complaint as though fully set forth herein.

134. As between Defendant P. A. Wolf and Defendants Wolf Auto Group, Alliance Capital Group, Wolf's Interstate Leasing and Sales, Wolf Auto Center, Wolf's Pinedale Dodge, Wolf's Whitehall Ford, Wolf Auto Center Jackson (the "LLC Defendants") there is such a unity of interest and ownership that the individuality, or separateness, of P. A. Wolf and the LLC Defendants has ceased and continued adherence to the fiction of the separate existence of the corporation would, under the circumstances, sanction a fraud or promote injustice.

135. Defendant P. A. Wolf has commingled funds and other assets, failed to segregate funds of the separate entities, and diverted LLC funds or assets to non-LLC uses. This commingling is most clearly demonstrated by the numerous UCC

filings indicating that all assets of Wolf "belong to" the LLC Defendants as well as the fact that Wolf and the individual Defendants repeatedly used their personal residences as addresses for the LLC, and vice versa.

136.   Defendant P. A. Wolf has treated the assets of the LLC Defendants as his own, transferring them among the entities at his whim and using the assets for his personal benefit.

137.   In various filings, Defendant P. A. Wolf has held out that he is personally liable for the debts of the LLC Defendants.

138.   P. A. Wolf failed to maintain minutes or adequate corporate records and confused the records of the separate entities.

139.   As demonstrated by the various filings in this case, the LLC Defendants each have nearly identical equitable ownership consisting of the individual (non-LLC) Defendants, who individually dominate and control the LLC Defendants.

140.   P. A. Wolf failed to adequately capitalize the LLC Defendants, resulting in their incurring debts beyond their abilities to pay. Indeed, it appears some of the LLC Defendants have no assets at all.

141.   P. A. Wolf has used the LLC Defendants as a mere shell, instrumentality or conduit for a single venture or business of P. A. Wolf, namely, his used car sales business.

142. P. A. Wolf has concealed and misrepresented the identity of the responsible ownership, management and financial interest of the LLC Defendants and used the LLC Defendants to conceal his personal business activities.

143. P. A. Wolf has disregarded legal formalities and failed to maintain arm's length relationships among the related entities.

144. P. A. Wolf has repeatedly used the various LLC Defendants to procure labor, services, and merchandise for other LLC Defendants.

145. P. A. Wolf has diverted assets from the various LLC Defendants to other persons or LLC Defendants to the detriment of creditors and manipulated assets and liabilities between the LLC Defendants so as to concentrate the assets in one and the liabilities in another.

146. P. A. Wolf has contracted with certain LLC Defendants with intent to avoid performance by using the LLC Defendants as a subterfuge of illegal transactions.

147. Finally, P. A. Wolf formed and used the LLC Defendants for the purpose of transferring existing liabilities to new entities.

148. Equity requires that this court find that P. A. Wolf and the LLC Defendants are the alter egos of P. A. Wolf and each other and that the corporate veils be disregarded.

## SECOND CLAIM
## BREACH OF CONTRACT
### Against All LLC Defendants Except Wolf Auto Group

149.   Plaintiff Whitmire hereby incorporates all allegations contained in the preceding paragraphs of this Verified Complaint as though fully set forth herein.

150.   Based on the unity of interest and ownership described above, equity requires the Court to disregard the fiction of the separate existence of the LLC Defendants from P. A. Wolf and instead recognize the acts of P. A. Wolf as those of the LLC Defendants and the acts of the LLC Defendants as those of P. A. Wolf.

151.   This includes the execution, non-performance, and default under the purchase agreement with Whitmire.

152.   Accordingly, the LLC Defendants should themselves also be held liable, jointly and severally with P. A. Wolf and Wolf Auto Group, to Whitmire for breach of the purchase agreement.

## THIRD CLAIM
## VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO")
### Against All Defendants

153.   Plaintiff Whitmire hereby incorporates all allegations contained in the preceding paragraphs of this Verified Complaint as though fully set forth herein.

154.   From the time Defendants P. A. Wolf and Wolf Auto Group, LLC defaulted on their obligations under the Purchase Agreement, the Defendants have conducted an enterprise engaged in a pattern of racketeering activity designed to prevent Plaintiff Whitmire from receiving the payment owed to him under the Purchase Agreement and pursuant to the Teton County judgment.

155.   The enterprise consists of the associated-in-fact group comprised of each of the individual Defendants P. A. Wolf, Carrasco, B. A. Wolf, J. Wolf, DeLoach, and Thomas and Nancy Rice together with each of the LLC Defendants Wolf Auto Group, Wolf Auto Center, Alliance Capital Group, Wolf's Interstate Leasing and Sales, Wolf Auto Center Jackson, Wolf's Pinedale Dodge, and Wolf's Whitehall Ford as well as Does 1-10.

156.   The individual Defendants P. A. Wolf, Carrasco, B. A. Wolf, J. Wolf, DeLoach and the Rices participate in the operation and management of this associated-in-fact enterprise by setting up sham companies, using their positions as managers and agents of the LLC Defendants to shield the assets of P. A. Wolf and Wolf Auto Group from the Whitmire judgment and from other creditors, and acting as straw purchasers to hold assets on behalf of P. A. Wolf and other LLC Defendants.

157. The LLC Defendants each participated in the operation and management of this associated in fact enterprise by accepting transfers and encumbrances made by the individual defendants designed to shield assets from Whitmire's judgment.

158. In addition, as alleged in Plaintiff Whitmire's first claim, such a unity of interest and ownership exists between the individual Defendants and the LLC Defendants that the individuality, or separateness, of such individuals and LLCs has ceased, and adherence to the fiction of the separate existence of the LLC Defendants would sanction a fraud and promote injustice. As such, the LLC Defendants have participated in the operation and management of this enterprise by acting as the alter egos of Defendant P. A. Wolf.

159. The enterprise described above has engaged in at least two related acts of racketeering activity that pose a threat of continued criminal conduct.

160. Under RICO, predicate acts of racketeering activity include mail fraud (18 U.S.C. Section 1341) and wire fraud (18 U.S.C. Section 1343). The Defendants committed numerous instances of mail or wire fraud in UCC filings designed to further a scheme to defraud Plaintiff Whitmire and other creditors. These instances include the following:

a.      On July 9, 2008, P. A. Wolf misrepresented the existence of a security interest in all of his assets in a UCC financing statement filed with the Colorado Secretary of State by use of the mail or wires. To conceal the fact that no actual creditor existed, Wolf fraudulently misrepresented himself as two separate entities–a "real man" Phillip A. Wolf and "the Jurisdic Person/Strawman/Dummy Corporation" Phillip A. Wolf, whom he falsely described as a "business" organized in "Puerto Rico." The financing statement is fraudulent because it purports to create a lien that does not actually exist upon the property of P. A. Wolf for the purpose of concealing the availability of that property to satisfy debts owed to his creditors.

b.      On April 22, 2009, either P. A. Wolf and/or Carrasco misrepresented the existence of a security interest in a UCC financing statement filed with the Colorado Secretary of State by use of the mail or wires. The April 22, 2009 financing statement is fraudulent because it falsely represents P. A. Wolf to be indebted to himself and that such debt was secured by all of his assets and real property at 2982 Robinson Hill Rd for the purpose of concealing the availability of those assets to satisfy the debts owed to his creditors when, in fact, no such debt exists or can exist under the law.

c.     On August 7, 2009, either P. A. Wolf and/or Carrasco misrepresented the existence of a security interest in all property at 2982 Robinson Hill Rd to secure a $20 million debt in favor of Alliance Capital Group, LLC in a UCC financing statement filed with the Colorado Secretary of State by use of the mail or wires. Plaintiff Whitmire alleges that no such debt existed and that Defendants P. A. Wolf and/or Carrasco filed the financing statement for the sole purpose of misleading creditors as to the ownership of the assets and their availability to satisfy debts.

d.     On August 25, 2009, either P. A. Wolf and/or Carrasco misrepresented the existence of a security interest in assets belonging to Wolf's Interstate Leasing and Sales in a UCC financing statement filed with the Colorado Secretary of State by use of the mail or wires. Plaintiff Whitmire alleges that no such security interest existed and that Defendants P. A. Wolf and/or Carrasco filed the financing statement for the sole purpose of misleading creditors.

e.     On October 27, 2014, Defendant Carrasco misrepresented the existence of a security interest in assets belonging to Wolf's Whitehall Ford, LLC and Wolf Auto Center in a UCC financing statement filed with the Montana Secretary of State by use of the mail or wires. Plaintiff Whitmire

alleges that no such security interest existed and that Defendant Carrasco filed the financing statement for the sole purpose of misleading creditors.

161.   To further their scheme to defraud creditors, Defendants also committed numerous instances of mail or wire fraud in entity filings with various secretaries of state. These acts include:

a.   Omitting P. A. Wolf as a member or manager on articles of organization, annual reports, and period reports for the LLC Defendants when, in fact, P. A. Wolf controlled and acted as the alter ego of each LLC Defendant. On information and belief, plaintiff Whitmire alleges that such omissions were calculated to deceive Whitmire and other creditors.

b.   Using the false name "PLoose Agt" in July 28, 2009 and July 29, 2010  annual reports mailed or wired to the Wyoming Secretary of State. Plaintiff Whitmire alleges P. A. Wolf and/or Wolf Auto Group used the false name for the purpose of obscuring the true management of Wolf Auto Group as part of a scheme to defraud Whitmire and other creditors.

c.   Using a forged signature of David Deloach to fraudulently express the consent of Alliance Capital Group to act as registered agent for Wolf Auto Group in a June 18, 2010 "Statement of Change" mailed or wired to the Wyoming Secretary of State.

     d.     Intentionally misspelling Carrasco's name "Carrassco" in an October 8, 2010 filing with the Colorado Secretary of State. On information and belief, Plaintiff Whitmire alleges either Defendants P. A. Wolf and/or Carrasco used the misspelled name as part of a scheme to defraud creditors.

     e.     Using the false assumed entity name "Alliance Capitol Group" in an October 8, 2010 filing with the Colorado Secretary of State. On information and belief, Plaintiff Whitmire alleges either Defendants P. A. Wolf and/or Carrasco used the false name to conceal the identity of Alliance Capital Group and thereby deceive Whitmire and other creditors.

     f.     Using the false name "Dave Delvue" on an April 28, 2014 filing with the Montana Secretary of State. On information and belief, Plaintiff Whitmire alleges Defendants P. A. Wolf and/or Carrasco used this false name to conceal the true identity of Alliance Capital Group's management and thereby deceive Whitmire and other creditors.

     g.     Using the false name "Cache Wolf" in an April 20, 2015 filing mailed or wired to the South Dakota Secretary of State. On information and belief, Plaintiff Whitmire alleges Defendant Phillip A. Wolf used the false name for the purpose of obscuring his interest in Wolf Auto Center, LLC as part of a scheme to defraud creditors.

h.      Using the fake addresses "170 Travis Way, Manhattan, CO" and PO Box 957, Belgrade, CO" for Carrasco as the registered agent of Wolf's Interstate Leasing and Sales in an August 11, 2017 filing with mailed or wired to the Colorado Secretary of State. The Colorado Limited Liability Company Act requires all LLCs to continuously maintain a registered agent "whose primary residence or usual place of business is in [Colorado]." See Colo. Rev. Stat. 7-80-301 & 7-90-701. Plaintiff Whitmire alleges Defendants P. A. Wolf and Carrasco used this fake address for the purpose of perpetuating the existence of a  company that would otherwise have been dissolved for failure to comply with the requirements of the law. See Colo. Rev. Stat. 7-90-903(5) (providing for dissolution of a company that remains delinquent for more than three years).

i.      Using the false name "Andrew Phillips" in a March 20, 2018 filing mailed or wired to the Wyoming Secretary of State. On information and belief, Plaintiff Whitmire alleges Defendant P. A. Wolf used this false name for the purpose of obscuring his true interest in Wolf Auto Center, LLC in order to perpetuate a scheme to defraud creditors.

j. Using the surname "Carrasco" in a number of documents mailed or wired to Secretaries of State for the States of Colorado, Wyoming, and Montana as part of a scheme to defraud creditors.

162. Under RICO, predicate acts also include "any offense involving fraud connected with a case under title 11." Plaintiff Whitmire alleges Defendant P. A. Wolf committed fraud "connected with a case under title 11" when he filed his Chapter 13 petition a mere seven days after the Teton County District Court entered judgment in favor of Whitmire, without actually intending to file the documents required to complete the petition, for the sole purpose of obtaining the benefit of the automatic stay.

163. In the alternative, on information and belief, Plaintiff Whitmire alleges Defendant Phillip A. Wolf's use of the mail or wire in filing the fraudulent bankruptcy petition amounts to another instance of mail or wire fraud.

164. This pattern of racketeering activity caused damage to Plaintiff Whitmire's business and property by rendering him unable to collect the amounts owed him under the purchase agreement and the Wyoming judgment.

## FOURTH CLAIM
## FRAUDULENT TRANSFER
**Against Defendants P. A. Wolf, Carrasco, B. A. Wolf, J. Wolf, Wolf Auto Group, Alliance Capital Group, Wolf's Interstate Leasing and Sales, Wolf Auto Center,**

**Wolf's Whitehall Ford, Wolf's Pinedale Dodge, Wolf Auto Center Jackson, and Thomas and Nancy Rice**

165.   Plaintiff Whitmire hereby incorporates all allegations contained in the preceding paragraphs of this Verified Complaint as though fully set forth herein.

166.   During the times specified below, the Defendants made the following transfers and incurred the following obligations for the purpose of defrauding creditors:

      a.   Between July 9, 2008 and August 25, 2009, Defendants P. A. Wolf, Alliance Capital Group, and Carrasco filed or caused to be filed a number of UCC financing statements evidencing substantial assets ("the UCC Assets") owned by P. A. Wolf and purporting to place a lien on those assets to satisfy debts owed to Defendants Alliance Capital Group, Wolf's Interstate Leasing and Sales, or Defendants P. A. Wolf and Carrasco in some different "jurisdic" capacity. Plaintiff Whitmire alleges no such debts actually existed and the liens purporting to secure such debts were a sham. In the November 17, 2015 debtor's examination, Defendant P. A. Wolf denied having any assets, including the UCC Assets. While the exact date is unknown, Plaintiff Whitmire therefore alleges that sometime between the filing of the UCC financing statements and the date of the debtor's exam,

Defendant P. A. Wolf transferred the UCC Assets to Defendants Alliance Capital Group, Wolf's Interstate Leasing and Sales, and Carrasco.

b.    On October 27, 2014, Defendant Carrasco filed a UCC Financing Statement in Montana purporting to create a security interest in all property owned by Wolf Auto Center, Wolf's Whitehall Ford, and all other Wolf entities, in favor of Alliance Capital Group.

c.    On information and belief, Plaintiff Whitmire alleges that at some point following the entry of the Whitmire judgment Defendant P. A. Wolf transferred the property 310 E. Legion St. in Whitehall, Montana from himself to Thomas E. and Nancy K. Rice in trust.

d.    On March 12, 2018, Alliance Capital Group acquired the property at 310 E. Legion St. in Whitehall, Montana as a result of a transfer from P. A. Wolf and/or the Rices.

e.    On information and belief, Plaintiff Whitmire alleges that at some point following the entry of the Whitmire judgment, Defendant P. A. Wolf advanced the funds used by B. A. Wolf to purchase the property at 170 Travis Way, Manhattan, Montana.

f.    On information and belief, Plaintiff Whitmire alleges that at some point following the entry of the Whitmire judgment, Defendant P. A.

---

Wolf advanced the funds used by B. A. Wolf and J. Wolf to purchase the property at 2124 Hidden Ranch Lane in Jackson, Wyoming and used the proceeds of the sale of that property to purchase property at 500 McNeal Power Plant, Alpine, Wyoming 83118.

167.   Defendants made such transfers with "actual intent" to hinder, delay, or defraud Plaintiff Whitmire and other creditors. Such "actual intent" is demonstrated by the following facts:

a.      The transferees are insiders of the debtors P. A. Wolf and Wolf Auto Group. Specifically, Carrasco is P. A. Wolf's Wife and therefore a relative of the debtor; B. A. Wolf is P. A. Wolf's son and therefore a relative of the debtor; the LLC Defendants are incorporated business organizations in which P. A. Wolf is or was a member, manager or acts as alter ego and his participation in these organizations included the right to conduct the business of the organizations and control them; and Defendants Thomas E. and Nancy K. Rice are, on information and belief, trustees for P. A. Wolf.

b.      Plaintiff Whitmire alleges P. A. Wolf remained in possession or control of the UCC Assets after the transfer based on: (i) the willing participation of Carrasco, the Rices, and B. A. Wolf in the schemes perpetrated by P. A. Wolf and in the enterprise in which P. A. Wolf exercised

management and control and (ii) the unity of ownership and interest between P. A. Wolf and the LLC Defendants.

c.      Defendants P. A. Wolf and Wolf Auto Group concealed the transfer by creating fraudulent lien documents, filing false UCC financing statements, moving the documents among various untraceable legal entities, and using false names and addresses.

d.      Before the transfers were made and the fake obligations purportedly incurred, P. A. Wolf and Wolf Auto Group had been sued by Plaintiff Whitmire for breach of contract and had judgment entered against them.

e.      Plaintiff Whitmire alleges on information and belief that the transfers and obligations were of "substantially all" assets belonging to P. A. Wolf and Wolf Auto Group. This allegation is supported by Defendant P. A. Wolf's claimed insolvency as evidenced by his attempted bankruptcy and statements at the debtor's examination as well as the statements themselves which describe interests in "all assets."

f.      As evidenced by Defendant P. A. Wolf's numerous moves between Wyoming, Colorado, and Montana, Plaintiff Whitmire alleges that P. A. Wolf "absconded" following the transfer.

g.     On information and belief, Plaintiff Whitmire alleges Defendants P. A. Wolf and Wolf Auto Group removed and concealed assets by transferring them among relatives and companies and by using straw purchasers such as the LLC Defendants, Carrasco, the Rices, B. A. Wolf, and J. Wolf to accept and hold property on their behalf.

h.     Based on the patently false and fraudulent character of the financing statements and their accompanying lien documents, and on information and belief, Plaintiff Whitmire alleges the value of the consideration P. A. Wolf and Wolf Auto Group received, if any, was not reasonably equivalent to the value of the assets transferred or the amount of the obligations purportedly incurred.

i.     As evident from P. A. Wolf's attempted bankruptcy and statements made in the debtor's examination, Plaintiff Whitmire alleges P. A. Wolf and Wolf Auto Group were insolvent at the time the transfers were made and obligations incurred.

j.     The transfers were made and obligations created shortly after a substantial debt in the form of the Whitmire judgment was incurred.

k.     As demonstrated by the UCC filings, which purport to create a significant lien against property owned by P. A. Wolf in favor of P. A. Wolf-

controlled entities, Plaintiff Whitmire alleges P. A. Wolf transferred the essential assets of the business to a sham lienor who transferred the assets to an insider of the debtor.

168. In addition, and notwithstanding the Defendants' "actual intent" to hinder, delay or defraud creditors, Whitmire alleges on information and belief that the Defendants made such transfers and incurred such obligations without receiving a reasonably equivalent value in exchange for the transfers and:

    a.    were engaged in business transactions for which their remaining assets were unreasonably small in relation to the transaction and that they intended to incur;

    b.    believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due; and

    c.    was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

## FIFTH CLAIM
## UNJUST ENRICHMENT / CONSTRUCTIVE TRUST
### Against All Defendants except P. A. Wolf and Wolf Auto Group

169. Plaintiff Whitmire hereby incorporates all allegations contained in the preceding paragraphs of this Verified Complaint as though fully set forth herein.

170.  By way of the transfers set forth above from P. A. Wolf to the remaining Defendants, the Defendants other than P. A. Wolf (the "Transferee Defendants") benefited by receiving something of value.

171.  The Transferee Defendants accepted, used, and enjoyed these benefits in their business and personal affairs.

172.  Because the transferred property would have otherwise been available to satisfy the judgment owed by the Transferor Defendants to Plaintiff Whitmire, the Transferee Defendants have been unjustly enriched by retaining the transferred property.

173.  The Transferee Defendants therefore hold title to the transferred property in trust for Plaintiff Whitmire, the person for whom, in equity and in good conscience, it should be held.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Whitmire respectfully requests the following relief:

a.  For all compensatory and punitive damages in an amount to be determined by the jury, with such amount calculated based on the amount awarded in Civil Action 14744 before the District Court of Teton County, Wyoming, Ninth Judicial District, equaling $278,161.31, with post-judgment interest accruing pursuant to W.S. § 1-16-102 at a rate of 10% per year from the rate of rendition

---

until paid, for a total amount owed as of July 19, 2018 of approximately $490,097.37, and accruing at a rate of approximately $76.21 per day, minus any amounts collected to date against Defendants;

     b.     For treble damages and reasonable attorney's fees as authorized by 18 U.S.C. § 1964(c), with such amount equaling approximately $1,470,292.11;

     c.     For injunctive relief preventing the further disposition of assets by the Defendants;

     d.     For an avoidance of the fraudulent transfers and obligations as well as an attachment of any transferred property, an injunction against further disposition, and appointment of a receiver if necessary;

     e.     For the imposition of a constructive trust on all property transferred to the Transferee Defendants by the Transferor Defendants to the extent necessary to satisfy Whitmire's judgment.

     f.     For pre- and post-judgment interest on all such amounts to the extent permitted by law;

     g.     For costs and disbursements incurred by Plaintiff in these proceedings and to the extent permitted by law;

     h.     For an award of reasonable attorney's fees; and

i.    For such other and further relief as this Court may deem just and

appropriate.

**A JURY TRIAL IS DEMANDED.**

Dated this 19th day of July, 2018.

By: _____

Granite Peak Law, PLLC
Gregory G. Costanza, Esq. (WY 7-5257)
PO Box 635
Bozeman, Montana 59771
(o) (406) 586-0576
Gregory@GranitePeakLaw.com
Attorney for Plaintiff Whitmire

<u>VERIFICATION</u>

I, Scott Whitmire declare as follows:

1.      I have read the above Complaint.

2.      I have personal knowledge of the facts asserted in the Complaint.

3.      With regard to the facts in the Complaint set out on information and belief, I have specific information, documentation, or both to support my belief as to the truth of those matters asserted or to reasonable inferences arising from such information or documentation.

4.      I verify, under penalty of perjury, that, to the best of my knowledge, the allegations set forth in the Complaint are true and correct.

Executed this _11_ day of ~~June~~ _July_, 2018 in ___Fulton___, Georgia.

_____

Scott Whitmire

Subscribed and sworn before me this _11_ day of ~~June~~ _July_, 2018

_____, Corey Lumsden, wells Fargo

Notary Public

---